UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-125-RGJ

PATRICIA KARSNER                                                                        Plaintiff

v.

HARDIN COUNTY,                                                                        Defendants
et al.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Patricia Karsner ("Karsner") alleges violations of state law and seeks relief under 42 U.S.C. § 1983, § 1985, and § 1986 for alleged violations of her rights under the Fourth and Fourteenth Amendments to the United States Constitution against Defendants Hardin County, Kentucky; Jenny Oldham ("Oldham"), individually and in her official capacity as Hardin County Attorney; Office of the Hardin County Attorney; Shane Young ("Young"), individually and in his official capacity as Commonwealth's Attorney, 9th Circuit (Hardin); Teresa Logsdon ("Logsdon"), individually and in her official capacity as Assistant Commonwealth's Attorney, 9th Circuit (Hardin); Office of the Commonwealth's Attorney, 9th Circuit (Hardin); the City of Radcliff, Kentucky; Radcliff Police Department; Sgt. Jarrett Kirkpatrick ("Kirkpatrick"), individually and in his official capacity as City of Radcliff police officer; and Warren Tooley ("Tooley"). [DE 16 at 134-35]. Defendants move to dismiss the Amended Complaint. [DE 18; DE 26; DE 27; DE 28; DE 39]. Briefing is complete and the matter is ripe. [DE 24; DE 32; DE 33; DE 34; DE 35; DE 37; DE 38; DE 42]. For the reasons below, Defendants' motions to dismiss are **GRANTED** [DE 18; DE 26; DE 27; DE 28; DE 39].

1

# I.   **BACKGROUND**

The events at issue in this case stem from a family court dispute between Karsner and Tooley.  [DE 16 at 141].  On September 21, 2015, Tooley "enlisted Defendant Kirkpatrick to conduct a civil standby in a confederacy to retrieve Tooley's teenage daughters . . . from Karsner's custody pursuant to a Jefferson County Family Court Order." *Id.*  Karsner refused to relinquish custody of their daughters. *Id.* Tooley and Kirkpatrick "left without the girls and without Kirkpatrick arresting Karsner for any crime." *Id.*  Kirkpatrick "advised Tooley to return to Jefferson County Family Court to resolve the matter." *Id.*  Instead, approximately an hour after leaving Karsner's house, Tooley "swor[e] out a false criminal complaint against Karsner for felony custodial interference which the Defendant Hardin County Attorney and Hardin District Court negligently accepted with reckless indifference to the rights of the Plaintiff while under the direct supervision of Defendant Jenny Oldham." *Id.* at 142 (internal citation omitted).

Two days later, "two other Radcliff Police Department officers acting upon the arrest warrant issued for Karsner resulting from Tooley's false criminal complaint broke Karsner's left arm very badly while trying to arrest and handcuff Karsner on her own front porch." *Id.*   As a result of her injuries, "Karsner on June 14, 2016, filed a federal lawsuit (3:16-cv-372-JHM) against the City of Radcliff, the City of Radcliff Police Department, the two Radcliff police officers involved in that entirely separate incident, and Tooley." *Id.*  The court dismissed the claims of abuse of process and malicious prosecution against Tooley and City of Radcliff settled the case with Karsner.  [DE 39-4 at 468-71; DE 27-2 at 300-03].

In July 2016, Young and Logsdon "conspired with Kirkpatrick (as witness) to present Karsner . . . to a Hardin County Grand Jury  . . .  for indictment on one count of felony custodial interference in retaliation for Karsner filing the aforementioned federal lawsuit against the friends

and co-workers of Kirkpatrick and Logsdon and Young." [DE 16 at 143]. A jury convicted Karsner of custodial interference. *Id.* The Kentucky Court of Appeals vacated the conviction. *See Karsner v. Commonwealth*, 582 S.W.3d 51, 54 (Ky. Ct. App. 2018) ("Here, there was no evidence produced by the Commonwealth that Karsner engaged in any overt conduct with the intent to keep the children from Tooley's custody. There being no evidence upon which a reasonable juror could find that Karsner took, enticed or kept the children from Tooley's custody, Karsner was entitled to a directed verdict of acquittal").

Karsner filed suit in this Court in February 2020. [DE 1]. Karsner asserts 42 U.S.C. § 1983, § 1985, and § 1986 and state-law malicious prosecution claims against Hardin County, Oldham, Office of the Hardin County Attorney, Young, Logsdon, Office of the Commonwealth's Attorney, City of Radcliff, Radcliff Police Department, and Kirkpatrick. [DE 16 at 143-53]. And she asserts state-law claims of malicious prosecution and abuse of process against Tooley. *Id.* at 145-48. Each Defendant has filed a motion to dismiss the claims against them. [DE 18; DE 26; DE 27; DE 28; DE 39].

## II.  **STANDARD**

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers*, USA, LLC,

3

561 F.3d 478, 488 (6th Cir. 2009)  (citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

## III.   DISCUSSION[1]

### A.   Statute of Limitations

Defendants argue that Karsner's § 1983 and § 1985 claims, to the extent they are based on false arrest and false imprisonment, are barred by the one-year statute of limitations.  [DE 26 at

---

[1]  When appearing before any court, zeal in representation, decorum, and professionalism by counsel are all expected.  In this case, however, Plaintiff's counsel's advocacy in the Amended Complaint and response briefs falls short of the decorum expected.  Counsel's comparison of Defendants' alleged treatment of his client, a white woman, to that of "a newly freed slave in 1871" and his characterization of Defendant Tooley "as a pissed off not-even-ex-husband—just a semen provider with a criminal record," among other comments, are unnecessary and inappropriate.  [DE 16 at 141; DE 32 at 246].  This is especially true as Tooley has no criminal record because all charges against him have been dismissed.  [DE 32-1; DE 32-2; DE 32-3].  Ad hominem attacks and crass language are never appropriate and do a disservice not only to the client, but to the legal profession.  *See* Fed. R. Civ. P. 12 (f); *Van Iderstine Co. v. RGJ Contracting Co.*, 480 F.2d 454, 459 (2d Cir. 1973)  ("Advocacy is an art in which the unrelenting pursuit of truth and the most thorough self-control must be delicately balanced.  Lawyers, as officers of the court, must always be alert to the rule that zealous advocacy in behalf of a client can never excuse contumacious or disrespectful conduct.  Counsel who abuse the adversary system and infect court proceedings with the tactics of street brawlers cast doubt upon their fitness as responsible advocates and betray a trust with which they are invested by the court and public"); *see also* Kentucky Bar Association's Code of Professional Courtesy.

4

203-04; DE 27-1 at 290-91; DE 28-1 at 315-16].   Karsner does not respond to their arguments and therefore waives opposition to them.[2]

§1983 does not provide its own statute of limitations, so federal courts "borrow" the limitations period for personal injury actions from the state where the events occurred. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).  For constitutional torts committed in Kentucky, the one-year limitation period under K.R.S. § 413.140(1)(a) for bringing general personal injury actions applies. *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 181-82 (6th Cir. 1990).

Federal law, on the other hand, governs when the statute of limitations for a § 1983 claim begins to run. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).  And the Sixth Circuit has held that the "statute of limitations begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007).  Thus, with regard to § 1983 claims based upon false arrest and false imprisonment, the statute of limitations begins to run on the date the plaintiff is detained. *Wallace v. Kato*, 549 U.S. 384, 397 (2007);  *see also Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007) (applying *Wallace* to hold that plaintiff's claims against arresting officer and others, alleging arrest without probable cause and excessive force in violation of the Fourth Amendment, and state law

---

[2] As noted throughout this Opinion, Karsner fails to respond to—and therefore effectively concedes—the majority of Defendants' arguments for dismissal. *See Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019)  ("[I]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (quoting *Rouse v. Caruso*, No. 6-cv-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011)) (internal quotation marks omitted); *Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008)  (recognizing that a party's lack of response to a motion or argument therein is grounds for the district court's grant of an unopposed motion to dismiss and noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"); *Paulmann v. Hodgdon Powder Co., Inc.*, No. 3:13-CV-0021-CRS-DW, 2014 WL 4102354, *1-2 (W.D. Ky. Aug. 18, 2014)  (holding that plaintiff's failure to respond or otherwise oppose defendant's motion to dismiss established that the plaintiff had waived opposition to the motion).

claims for false arrest, false imprisonment, and assault and battery, accrued, for limitations purposes, on date of arrest, and were barred by Kentucky's one-year statute of limitations).

Although the statute of limitations is an affirmative defense, a complaint can be dismissed for failure to state a claim if the allegations of the complaint demonstrate that the claim would be barred by the applicable statute of limitations. *See Franklin v. Fisher*, No. 16-6464, 2017 WL 4404624, at *2 (6th Cir. 2017)  ("The district court properly dismissed [the plaintiff's] complaint for failure to state a claim upon which relief may be granted because it is obvious from the face of her complaint that almost all of her claims are barred by the applicable statute of limitations"); *Castillo v. Grogan*, 52 F. App'x 750, 751 (6th Cir. 2002)  ("When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint as frivolous is appropriate").

Karsner knew, or should have known, about the facts underlying her constitutional claims on September 23, 2015, the date of her allegedly false arrest and false imprisonment.  [DE 16 at 142].  Thus, to satisfy Kentucky's one-year statute of limitations application to § 1983 actions, Karsner should have filed this § 1983 action asserting claims under the Fourth Amendment no later than September 23, 2016.  Karsner, however, did not initiate this action until February 2020, more than three years after the one-year statute of limitations had expired.  [DE 1].  As a result, the Court will dismiss Karsner's § 1983 and § 1985 claims, to the extent they are based on false arrest and false imprisonment, as barred by the one-year statute of limitations.  *See Moore v. Moore*, No. 1:19-CV-01634, 2019 WL 6683171, at *4 (N.D. Ohio Dec. 6, 2019)  (finding § 1983 claim based on false arrest and false imprisonment time-barred and dismissing it);  *Wilson v. Mammoth Video, Inc.*, No. 07-13394, 2009 WL 777866, at *3 (E.D. Mich. Mar. 20, 2009) (same); *Cisneros v. Randall*, No. 3:06-0190, 2006 WL 2037561, at *5 (M.D. Tenn. July 17, 2006)  (same).

**B.    Immunity**

1. <u>Radcliff Police Department</u>

Radcliff Police Department argues that police departments are not entities subject to suit and City of Radcliff, not Radcliff Police Department, is the "appropriate defendant."  [DE 27-1 at 290].  Karsner does not respond to this argument and therefore waives opposition to it.  *See infra*, fn. 2.

The Court dismisses the claims against Radcliff Police Department because it is not an entity subject to suit.  *See Smallwood v. Jefferson County Government*, 743 F. Supp. 502, 503 (W.D. Ky. 1990); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  Rather, the claims against the police department are against City of Radcliff as the real party in interest.  *See Matthews*, 35 F.3d at 1049 ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint."); *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991)  (holding that a police department may not be sued under § 1983); *Bennett v. Radcliff Police Dept.*, 2013 WL 4456677, *5 (W.D. Ky. Aug. 16, 2013)  (finding that Kentucky case law treats police departments as mere divisions of the city government and dismissing state law claim against Radcliff Police Department because "[p]laintiffs should have sued the City of Radcliff, rather than the RPD, for recovery on its state and federal law claims").

2. <u>Office of the Hardin County Attorney and Office of the Commonwealth's Attorney</u>

*a.  § 1983 and § 1985 claims*

Office of the Hardin County Attorney and Office of the Commonwealth's Attorney argue that they are entitled to sovereign immunity from Karsner's § 1983 and § 1985 claims against

them.   [DE 26 at 205-08; DE 28-1 at 322-23].   Karsner does not respond to their arguments and therefore waives opposition to them.  *See infra*, fn. 2.

A state or its agencies sued for money damages are not "persons" subject to suit under § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Jordan v. Kentucky*, No. CIV. A. 309CV-424-M, 2009 WL 2163113, at *4 (W.D. Ky. July 16, 2009) (finding Commonwealth's Attorney's Office is not a "person" subject to suit under § 1983);  *Benton v. Kentucky-Jefferson Cty. Attorney's Office*, No. 3:14CV-264-S, 2014 WL 3941571, at *4 (W.D. Ky. Aug. 12, 2014)  ("Defendant Jefferson County Attorney's Office, as a municipal agent, is the legal counsel for the Louisville/Jefferson County Metro Government. As the Jefferson County Attorney's Office is not an entity subject to suit, the § 1983 claim against it must be brought against the Louisville/Jefferson County Metro Government as the real party in interest").  Thus, because neither the Office of the Hardin County Attorney nor the Office of the Commonwealth's Attorney is a "person" subject to suit under § 1983, the claims against them must be dismissed for failure to state a claim upon which relief can be granted.

In addition, claims against a state, its agencies, or its arms of state are barred by the Eleventh Amendment to the United States Constitution.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  As a result, the Court dismisses the § 1983 and § 1985 claims against the Office of the Hardin County Attorney and the Office of the Commonwealth's Attorney.  *See Lamb v. Wallace*, No. 16-6253, 2017 WL 3597004, at *2 (6th Cir. July 13, 2017)  ("[A]ll claims against the Warren County Attorney's Office are barred for failure to state a claim and by Eleventh Amendment immunity"); *Ferritto v. Ohio Dep't of Highway Safety*, 928 F.2d 404 (6th Cir. 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985").

### b. State law claim

Office of the Hardin County Attorney and Office of the Commonwealth's Attorney argue that they are entitled to sovereign immunity from Karsner's malicious prosecution claim against them.  [DE 26 at 205-08; DE 28-1 at 323].  Karsner does not respond to this argument and therefore waives opposition to it.  *See infra*, fn. 2.

Whether sovereign immunity precludes a state-tort action is determined by Kentucky law. "It is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis,* 65 S.W.3d 510, 517 (Ky.2001).  The doctrine of sovereign immunity extends to tort claims.  *Univ. of Louisville v. Martin*, 574 S.W.2d 676, 677 (Ky. Ct. App. 1978)  (citing *Foley Const. Co. v. Ward*, 375 S.W.2d 392 (Ky. 1963);  *All-Am. Movers, Inc. v. Kentucky ex rel. Hancock*, 552 S.W.2d 679 (Ky. Ct. App. 1977)).  The Kentucky General Assembly has never expressly stated or otherwise suggested that it intended to waive sovereign immunity for tort claims against the government.  Faced with such claims, courts have found that no waiver exists.  *See Schwindel v. Meade Cty.*, 113 S.W.3d 159, 163 (Ky. 2003)  (rejecting the argument that CALGA "constitutes a waiver by the General Assembly of a county's immunity from vicarious liability for damages arising from the tortious performance of ministerial acts by its employees");  *Yanero*, 65 S.W.3d at 526 (noting that governmental subdivisions' immunity is grounded in the Kentucky Constitution and thus not waived);  *Tinch v. Jefferson Cty. Pub. Sch. Sys.*, No. 3:12-CV-844-DJH, 2016 WL 1574149, at *4 (W.D. Ky. Apr. 19, 2016)  (dismissing a defamation claim under Kentucky law because sovereign immunity had not been waived).  As a result, Office of the Hardin County Attorney and Office of the Commonwealth's Attorney are entitled to sovereign immunity for Karsner's malicious prosecution claim.  *See Jackson v. Jernigan*, No. 3:16-CV-00750-JHM, 2017

WL 1962713, at *13 (W.D. Ky. May 11, 2017)  (finding Commonwealth has sovereign immunity and dismissing state law claims against it).

   3. <u>Hardin County</u>

      *a. State law claim*

Hardin County argues that it is entitled to sovereign immunity from Karsner's malicious prosecution claim.  [De 18-1 at 171; DE 28-1 at 322].  Karsner does not respond to this argument and therefore waives opposition to it.  *See infra*, fn. 2.

The Court agrees that Hardin County is entitled to sovereign immunity from this claim. *See  Lotton v. Se. Indiana Gov't*, No. 6:14-CV-175-GFVT, 2015 WL 429549, at *2 (E.D. Ky. Feb. 2, 2015)  ("All county governmental entities in Kentucky, including Boone, Kenton, Gallatin, and Hardin counties, have sovereign immunity on all state law damage claims against them");  *Jones v. Cross*, 260 S.W.3d 343, 346 (Ky. 2008)  ("Counties in Kentucky are political subdivisions of the state, and as such have been held to share the state's sovereign immunity").

   4. <u>Young, Logsdon, and Oldham</u>

      *a. Official capacity claims*

Young and Logsdon argue[3] that they are entitled to sovereign immunity from Karsner's claims against them in their official capacity.  [DE 26 at 205].  Karsner does not respond to this argument and therefore waives opposition to it.  *See infra*, fn. 2.

---

[3] Although Oldham does not raise this issue, the Court may consider it *sua sponte*.  *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015)  ("[W]e hold that rather than an affirmative defense, the Eleventh Amendment is a true jurisdictional bar that courts can—but are not required to—raise *sua sponte* at any stage in litigation, and, once raised as a jurisdictional defect, must be decided before the merits");  *see also Howard v. Commonwealth of Virginia*, 8 F. App'x 318, 319 (6th Cir. 2001)  ("The court had the authority to dismiss the case with or without a motion by the defendant, because federal courts may consider the issue of Eleventh Amendment immunity sua sponte").

Under the Eleventh Amendment to the U.S. Constitution, a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). The Commonwealth of Kentucky has not waived its immunity, and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *See Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991); *see Ferritto*, 1991 WL 37824 at *2 ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985."). The Eleventh Amendment similarly bars the damages claims against state officials sued in their official capacity. *See Graham*, 473 U.S. at 169 ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity"); *McCrary v. Ohio Dep't of Human Servs.*, No. 99-3597, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees in their official capacities for damages barred by Eleventh Amendment immunity). As a result, the claims against Young, Logsdon, and Oldham, who are employees of the Commonwealth of Kentucky sued in their official capacities for monetary damages, are barred by Eleventh Amendment immunity. *See Boone v. Kentucky*, 72 Fed.Appx. 306, 307 (6th Cir. 2003) ("Boone's request for monetary relief against the prosecutors in their official capacities is deemed to be a suit against the state and also barred by the Eleventh Amendment."); *McDonald v. Prior*, No. 5:15CV-P6-TBR, 2015 WL 4041476, at *4 (W.D. Ky. July 1, 2015) (finding that the official-capacity claims for damages against prosecutors were barred by Eleventh Amendment immunity); *Pusey v. City of Youngstown,* 11 F.3d 652, 657–58 (6th Cir.1993) (holding that a municipal prosecutor acts as an arm of the state in prosecuting or declining to prosecute state criminal offenses; *Byas v. Kentucky*, No. 5:16CV-121-TBR, 2017 WL 1319832, at *3 (W.D. Ky. Apr. 6, 2017) (finding

Eleventh Amendment barred § 1983 claim against head county attorney);  *Tunne v. Paducah Police Dep't*, No. 5:08 CV-188-R, 2010 WL 323547, at *8 (W.D. Ky. Jan. 21, 2010)  ("Any official capacity claim against the McCracken County Prosecutor is barred by the Eleventh Amendment and is not cognizable under § 1983").

Further, Young, Logsdon, and Oldham when sued in their official capacities for monetary damages are not considered "persons" subject to suit under § 1983 or § 1985.  *See Will*, 491 U.S. at 71 (1989) (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim).  As a result, the Court dismisses the § 1983 and § 1985 claims against Young, Logsdon, and Oldham in their official capacities.

### b.  Individual capacity claims

Young and Logsdon also argue that they are entitled to absolute prosecutorial immunity: "Because Plaintiff's claims against Prosecuting Defendants Young and Logsdon are predicated on conduct relating to Grand Jury proceedings, the evaluation of evidence or the strength of a case for trial, and the actual jury trial itself, they are barred by the doctrine of prosecutorial immunity." [DE 26 at 212].  Karsner disagrees, arguing that whether they are entitled to absolute prosecutorial immunity is a question of fact inappropriate for resolution on a motion to dismiss.  [DE 32 at 345].

"Prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*,  424 U.S. 409, 431 (1976)).  To determine whether a prosecutor is entitled to absolute immunity, courts consider whether he or she was engaged in "prosecutorial," "investigative," or "administrative" functions.  *See Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010).  Prosecutorial functions include participation in probable cause

hearings, grand jury hearings, pretrial proceedings, witness preparation, and trials. *Id.* A supervising prosecutor is also absolutely immune to claims stemming from his supervision of other prosecutors. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (stating that, although the supervision of prosecutors is an administrative function, it is "directly connected with the conduct of a trial").

As long as the prosecutor was engaged in prosecutorial functions, he or she is absolutely immune regardless of whether he undertook his actions maliciously, in bad faith, or with an improper motive. *See Imbler*, 424 U.S. at 427 (prosecutor immune after knowingly presenting perjured testimony and suppressing exculpatory evidence at trial); *Grant v. Hollenbach*, 870 F.2d 1135, 1139 (6th Cir. 1989) (prosecutor immune for deciding to investigate and conspiring to present false charges to the grand jury, allegedly to satisfy a campaign promise to be tough on child abuse). "The question whether absolute immunity protects a defendant prosecutor from liability presents a legal question that the Court decides as a matter of law." *Gavitt v. Ionia Cty.*, 67 F. Supp. 3d 838, 851–52 (E.D. Mich. 2014), *aff'd sub nom. Gavitt v. Born*, 835 F.3d 623 (6th Cir. 2016).

In support of her claims against Young and Logsdon, Karsner alleges:

> 13. Plaintiff Karsner was injured on or about September 21, 2015, when JK sent a baseless criminal complaint of Defendant Warren Tooley to the Commonwealth's Attorney's Office, 9th Circuit (Hardin) for review, and was again injured on or about July 14, 2016, when JK testified against Karsner during a Grand Jury proceeding of Hardin County over which Co-Defendant Teresa E. Logsdon was presiding and/or at which she was prosecuting.

> 14. Defendant Hon. Shane Young was Logsdon's supervisor and trainer on or about July 14, 2016, when the decision was made by the Defendant Office of the Commonwealth's Attorney, 9th Circuit (Hardin) and/or Defendant Young and/or Defendant Logsdon to initiate and continue criminal proceedings with an improper motive against Karsner.

. . .

20.  The Commonwealth of Kentucky Court of Appeals noted at the bottom of page 7 of its Opinion Reversing continuing to the top of page 8 that "[t]he Commonwealth failed to produce even a scintilla of evidence that [Karsner] engaged in any overt conduct to defeat Tooley's right to custody."

21.  Accordingly, **all** Defendants knew or should have known they had not even a scintilla of evidence to accept the criminal complaint sworn out by Tooley (Exhibit 5) or to complain against, indict, charge and try Plaintiff Karsner for felony custodial interference which is evidence of outrageous, morally depraved and malicious conduct warranting punitive damages.

. . .

33.  As a result of her injuries, Karsner on **June 14, 2016**, filed a federal lawsuit (3:16-cv-372-JHM) against the City of Radcliff, the City of Radcliff Police  Department, the two Radcliff police officers involved in that entirely separate incident, and Tooley.

34.  Thirty (30) days thereafter with no action having been taken despite ten months having passed to conduct an investigation based on Kirkpatrick's referral of the incident on September 21, 2015, to the Commonwealth Attorney's Office for  review, Defendants Hon. Shane Young and Teresa Logsdon, individually and in their   capacities   as   Commonwealth's Attorney and Assistant Commonwealth's     Attorney 9th Circuit (Hardin), respectively, and while both were acting under color of law and in the course of their employment, conspired with Kirkpatrick (as witness)     to present Karsner—*without a scintilla of evidence according to the Court of Appeals!*—to a Hardin County Grand Jury on **July 14, 2016**, for indictment on  one count of felony custodial interference in retaliation for Karsner filing the aforementioned federal lawsuit against the friends and co-workers of Kirkpatrick and Logsdon and Young.  See Exhibit 6 hereto.

35.  After conspiring with Kirkpatrick to initiate criminal proceedings with improper motive Logsdon and Young continued criminal proceedings with deliberate indifference to Karsner's legal rights and with an improper motive by seeking conviction of Karsner for felony custodial interference at a jury trial and further sought to have Karsner imprisoned for one year. See *McCollum v. Garrett*, 880 S.W.2d 530 (Ky. 1994).

[DE 16 at 138-43 (emphasis in original)].

Whether Young and Logsdon's actions "were an integral part of the judicial process or were intimately associated with the judicial process" is a matter of law.  As such, the Court can properly consider this issue on a motion to dismiss.  *Gavitt*, 67 F. Supp. at 851–52.  Based on her allegations, Karsner's theory appears to be that Young and Logsdon violated her rights by presenting her case to the grand jury, "continu[ing] criminal proceedings" against her, and "seeking conviction . . . for felony custodial interference at jury trial."  [DE 16 at 142-43].

Young and Logsdon are, however, entitled to absolute prosecutorial immunity because—based on Karsner's allegations—at all times they were performing prosecutorial functions.  *See Imbler*, 424 U.S. at 427; *Koubriti*, 593 F.3d at 467; *Van de Kamp*, 555 U.S. at 344.  Karsner further alleges that they conspired and presented the case against her in retaliation for her filing suit against their law enforcement colleagues.  [DE 16 at 142].  But, even accepting these facts as true, as the Court must do on a motion to dismiss, binding case law makes it quite clear that they are nevertheless absolutely immune from her claims that they conspired to retaliate against her.  *See Lomaz v. Hennosy*, 151 F.3d 493, 498 n.7 (6th Cir. 1998)  ("[T]he motives of an official are irrelevant to the determination of absolute immunity from a § 1983 suit"); *Howell v. Sanders*, 668 F.3d 344, 350 (6th Cir. 2012)  (Even "a prosecutor who maliciously institutes a false prosecution with no probable cause is entitled to absolute immunity"); *Huffer v. Bogen*, 503 F. App'x 455, 460 (6th Cir. 2012)  ("Huffer argues that immunity does not apply because the prosecutors in this case acted outside their prosecutorial duties when they prosecuted him without probable cause and based on false information. This argument lacks merit.  Prosecutorial immunity extends to claims regarding the evaluation of evidence and the determination of probable cause").  As a result, Young and Logsdon are absolutely immune from Karsner's federal claims against them in their individual capacities because the actions complained of are an "integral part of the judicial process."

15

Prosecuting Defendants Young and Logsdon also assert they have absolute prosecutorial immunity against Karsner's state-law malicious prosecution claim against them.  [DE 26 at 212]. Karsner does not respond to this argument and therefore waives opposition to it.  *See infra*, fn. 2.

"Similar to federal law, Kentucky offers both absolute immunity and qualified immunity to prosecutors.   Kentucky also uses function as the dividing line, providing absolute immunity for a prosecutor's actions taken as an advocate."  *Howell*, 668 F.3d at 355 (internal citations omitted). As Kentucky law looks to federal law in analyzing absolute prosecutorial immunity, the Court finds that Young and Logsdon are entitled to absolute immunity for presenting the charges to the Hardin County Grand Jury and presenting their case against Karsner to a jury.  *Walden v. Pryor*, No. 5:18-CV-171-TBR, 2019 WL 2441838, at *6 (W.D. Ky. June 11, 2019)  (finding defendant entitled to absolute immunity against state law claims for presenting case to grand jury).  As a result, the Court dismisses Karsner's state-law malicious prosecution claim against Young and Logsdon in their individual capacities.[4]

As for Oldham, she argues that she is entitled to absolute prosecutorial misconduct because, even assuming she authorized Tooley's criminal complaint, doing so was part of her role as a prosecutor:

> Clearly any action, although specifically denied, of Oldham regarding the allegations of the tendered Amended Complaint would be 'closely related' to the 'judicial phase of the criminal process' wherein Karsner was charged with Custodial Interference. Although specifically denied, any activity of Oldham when viewed most favorably for Karsner would clearly be part of a judicial process, i.e., Hardin District Court. The filing of a criminal complaint by a citizen (Tooley), the approval of and the issuance of an arrest warrant by a district judge and Karsner's subsequent arrest are clearly part of the 'judicial process' that cloaks Oldham in absolute immunity. Oldham did not act in any manner as to what took place leading up to Karsner's arrest on September 24, 2015, but even if she did she would be cloaked in Absolute Immunity.

---

[4] Because the Court has found that they are entitled to absolute immunity, the Court need not consider their qualified immunity arguments.

[DE 28-1 at 327].

Karsner does not respond to this argument and therefore waives opposition to it. *See infra*, fn. 2. Karsner alleges that Tooley swore out "a false criminal complaint against Karsner for felony custodial interference which the Defendant Hardin County Attorney and Hardin District Court negligently accepted with reckless indifference to the right of the Plaintiff while under the direct supervision of Defendant Jenny Oldham." [DE 16 at 142]. But, accepting a criminal complaint is clearly part of the "judicial process," and in allegedly doing so Oldham is entitled to absolute immunity. *See Tunne*, 2010 WL 323547 at *8 ("Plaintiff takes issue with the McCracken County Prosecutor's presentation of the arrest warrant to the judge and the prosecutor's decision to prosecute Plaintiff for the charged offenses. These allegations, however, clearly involve 'advocatory' conduct"); *Ireland v. Tunis,* 113 F.3d 1435, 1446 (6th Cir.1997) ("A prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer fall squarely within the aegis of absolute prosecutorial immunity"). As a result, Karsner's § 1983 claim and malicious prosecution claims against Oldham in her individual capacity are dismissed. *See Howell*, 668 F.3d at 355.

5. Kirkpatrick

*a. Official capacity claims*

Kirkpatrick argues that Karsner has failed to sufficiently state a claim against him in his official capacity. [DE 27-1 at 291]. Karsner does not respond to this argument and therefore waives opposition to it. *See infra*, fn. 2.

"If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity." *Raley v. Osborne*, No. CIV.A.4:07-CV-70-M, 2007 WL 3342515, at *2 (W.D. Ky. Nov. 8, 2007). As a result, Karsner

must plausibly allege that violation of her constitutional rights resulted from acts representing official policy or custom adopted by the City of Radcliff.  *See Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 690-91.  Because, as discussed below, Karsner has failed to plausibly state a *Monell* claim against City of Radcliff, the Court dismisses her claim against Kirkpatrick in his official capacity.

### b. Individual capacity claims

Based on the Amended Complaint, Karsner is asserting a malicious prosecution claim against Kirkpatrick in his individual capacity for testifying against her during the grand jury proceedings and the trial.  [DE 16 at 142-43].  Kirkpatrick argues that Karsner's federal and state malicious prosecution claims against him in his individual capacity fail as a matter of law because she has not plausibly alleged that his actions were not supported by probable cause.  [DE 27-1 at 292-95].  Karsner disagrees.  [DE 33 at 371].

The Court agrees with Kirkpatrick: he has absolute immunity from Karsner's § 1983 claim. *See Rehberg v. Paulk*, 556 U.S. 356, 369 (2012) ("[A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony . . . [T]his rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution."); *Vaughan v. City of Shaker Heights*, 514 F. App'x 611, 613 (6th Cir. 2013) (holding that detective was absolutely immune from plaintiff's claims related to his grand jury testimony and his failure to disclose exculpatory evidence).  Kirkpatrick also has absolute immunity for his testimony during her trial.  *See Moldowan v. City of Warren*, 578 F.3d 351, 390 (6th Cir. 2009)  ("Detective Ingles is entitled to absolute immunity for the testimony he offered at trial"); *Briscoe v. LaHue*, 460 U.S. 325, 328 (1983)  ("[A]ll witnesses—police officers as well as

lay witness—are absolutely immune from civil liability based on their trial testimony in judicial proceedings");   *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999)  ("Satterfield would be insulated from liability for any testimony that he provided as a witness at trial, no matter how egregious or perjurious that testimony was alleged to have been . . . Moreover, we note also that the mere fact that plaintiffs may allege a conspiracy to render false testimony, as opposed to simply alleging that one person testified falsely at trial, does not waive absolute testimonial immunity").

Likewise, to the extent Karsner alleges a state law claim for malicious prosecution against Kirkpatrick[5], that claim fails as well.  In Kentucky, "where there is a specific finding of probable cause in the underlying criminal action . . . a malicious prosecution action cannot be maintained." *Broaddus v. Campbell*, 911 S.W.2d 281, 283 (Ky. Ct. App. 1995).  "When a grand jury . . . finds an indictment to be a true bill, the presumption is prima facie that . . . the prosecutor had reasonable grounds for the prosecution." *Davidson v. Castner–Knott Dry Goods Co.*, 202 S.W.3d 597, 607 (Ky. App. 2006)  (quoting *Conder v. Morrison*, 121 S.W.2d 930, 931 (1938). "[A] grand jury indictment raises a presumption of probable cause," that must be rebutted by the plaintiff. *Davidson*, 202 S.W.3d at 607. Like its federal counterpart, the Kentucky malicious prosecution claim in this case fails because Karsner has not pleaded facts to rebut the presumption of probable cause.  *See Hall v. City of Williamsburg*, No. 6:16–304–DCR, 2017 WL 3668113, at *10 (E.D. Ky. Aug. 24, 2017) (recognizing the overlap between state and federal malicious prosecution claims).  In addition, Kirkpatrick is "shielded by absolute testimonial immunity" under Kentucky

---

[5] City of Radcliff argues that Karsner's malicious prosecution claim fails against it for the same reasons it fails against Kirkpatrick.  [DE 27-1 at 294-95].  Karsner argues, without further explanation, that "*Martin v. O'Daniel,* 507 S.W.3d 1 (Ky. 2016) sets forth the most current pronouncement of the 5 elements of malicious prosecution in Kentucky. Plaintiff meets them all as already set forth on page 13 of her First Amended Complaint."  [DE 33 at 371].  The Court agrees with City of Radcliff and dismisses Karsner's state law malicious prosecution claim against it.  See *Broaddus*, 911 S.W.2d at 283 ("[W]here there is a specific finding of probable cause in the underlying criminal action . . . a malicious prosecution action cannot be maintained").

law for his testimony during the trial. *See Phillips v. McCollom*, No. 4:11-CV-00066-JHM, 2012 WL 3925413, at *5 (W.D. Ky. Sept. 7, 2012) (quoting *Smith v. Wolfe*, 2011 WL 3370341, *2 (Ky. App. Aug. 5, 2011)). As a result, the Court dismisses Karsner's federal and state claims for malicious prosecution against Kirkpatrick in his individual capacity.

    6. Tooley

    Karsner asserts state-law claims against Tooley of malicious prosecution and abuse of process. [DE 16 at 145-48]. Tooley argues, among other things[6], that Karsner's claims against him are barred under the doctrine of res judicata. [DE 39-1 at 435]. Karsner does not respond to this argument and therefore waives opposition to it. *See infra*, fn. 2.

    Res judicata is an affirmative defense, but may be raised in the context of a motion to dismiss. *See Westwood Chemical Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir.1981) ("[I]t is now clearly established that res judicata can also be raised by motion."). "The doctrine of res judicata precludes a subsequent suit between the same parties based on the same claims or causes of action that were or could have been raised in a prior action." *Fillmore v. Brush Wellman, Inc.*, 2004 WL 527167, at *1 (N.D.Ohio Feb. 5, 2004) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).

    "The preclusive effect of a federal-court judgment is determined by federal common law." *Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 681 F.3d 819, 824 (6th Cir.2012) (citation omitted). Claim preclusion is the doctrine by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or raising a new defense to defeat a prior judgment. *See Montana v. United States*, 440 U.S. 147, 153 (1979). It precludes not only relitigating a claim previously adjudicated; it also precludes litigating a claim

---

[6] Because the Court has found that Karsner's claims against Tooley are precluded under the doctrine of res judicata, the Court need not consider Tooley's remaining arguments in his motion to dismiss.

or defense that should have been raised, but was not, in the prior suit. *See Stern v. Mascio*, 262 F.3d 600, 608 (6th Cir.2001) (citing *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660–61 (6th Cir.1990)). "Claim preclusion only arises, however, in the presence of the following four elements: (1) where the prior decision was a final decision on the merits; (2) where the present action is between the same parties or their privies as those to the prior action; (3) where the claim in a present action should have been litigated in the prior action; and (4) where an identity exists between the prior and present actions." *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003). "[T]hough typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010)

The Court finds that Karsner's claims against Tooley—which her counsel in this case previously raised and filed on her behalf—are precluded by the doctrine of res judicata and will be dismissed. In October 2016, the court granted Tooley's motion to dismiss Karsner's claim against him for malicious process and abuse of process based on his decision to file a criminal complaint against her. [DE 39-4 at 466-71]. The allegations and claims against Tooley in this case are identical to the ones in the 2016 case. [*Compare* DE 16 at 145-48 *with* DE 39-2 at 452-55]. Plaintiff's counsel appears to have re-filed these claims with no additional details or meaningful changes to the allegations despite the fact that the court previously dismissed these claims. Because these claims satisfy all four elements of the test for claim preclusion[7], the Court

---

[7] Indeed, it appears as though Karsner's counsel copied and pasted language from the 2016 complaint into the Amended Complaint in this case. [*Compare* DE 16 at 147 *with* DE 39-2 at 454].

finds that Karsner is precluded from bringing them again in this action. As a result, the Court dismisses her claims against Tooley.

## C.      Failure to State a Claim

### 1. Municipal Liability Claims

Karsner asserts municipal liability claims against Hardin County and City of Radcliff.[8] Hardin County argues that "Karsner's Complaint . . . fails to meet a minimum pleading standard since it only references Hardin County as 'municipal policy makers' and does not reference any specific policy or custom associated with any action of Hardin County." [DE 28-1 at 323]. Karsner contends that Hardin County is "liable for the actions of both Defendants Hon. Jenny Oldham, individually and in her capacity as Hardin County Attorney, and Hardin County Attorney's Office. Accordingly, the policies and procedures for the intake of criminal complaints sworn out by citizens against each other in Hardin District Court, under the auspices of the authority of the Hardin County Attorney's office, are very much at issue in an action under 42 U.S.C. §1983 *et. seq.*" [DE 24 at 192]. City of Radcliff argues that Karsner's municipal liability claim against it fails to state what the alleged "custom, policies, and practices are or how they might be tied to what allegedly happened here." [DE 27-1 at 291]. Karsner responds:

> The City of Radcliff and its police department establish policy and training related to the prosecution of cases complained of by disgruntled biological father's with history of criminal charges against biological mother's involving custody of rebellious teenagers after sitting on a desk for over ten months and not even resulting from an arrest by a sworn law enforcement officer. The City of Radcliff policies and customs implemented through its Radcliff Police Department regarding which cases are referred for prosecution and which are not, which cases are investigated using precious resources and which are not, and what training employees such as Kirkpatrick receive with respect to testimony at Grand Jury hearings have a direct causal link with violation of the Plaintiff's constitutional

---

[8] The Court need not consider Karsner's allegations against Office of the Hardin County Attorney, Office of the Commonwealth's Attorney, or Radcliff Police Department because the Court has already dismissed Karsner's § 1983 claims against them in section (III)(B)(1) and (B)(2)(a) of this Opinion.

rights under the *Raley* case cited by movants.  Plaintiff is entitled to discovery on specifically which policy, procedure or custom Kirkpatrick was following when making the decision to not arrest Karsner on September 21, 2015, but also making the decision to refer the case to prosecutors for review and also testifying that a crime actually had been committed that day when he testified before the Grand Jury and when he testified at a criminal jury trial.

[DE 33 at 374].

A plaintiff asserting a municipal liability claim under § 1983 must allege that the federal violation occurred because of a municipal policy or custom.  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).  To properly assert a municipal liability claim, a plaintiff must sufficiently allege: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell,* 436 U.S. at 694.  In support of her § 1983 claim, Karsner alleges:

> 40. This misconduct by Oldham, Kirkpatrick, Young and Logsdon were undertaken while acting under color of law and in the course of their employment pursuant to the custom, policy and practice of the Defendants Radcliff Police Department and Office of the Commonwealth's Attorney 9th Circuit (Hardin) and Hardin County and the City of Radcliff and Hardin County Attorney in that:
>
> a. As a matter of custom, policy and practice, the Hardin County Attorney failed to adequately train, supervise and control its employees accepting from citizens criminal complaints like Exhibit 5 such that its failure to do so manifests deliberate indifference; and,
>
> b. As a matter of custom, policy and practice, the City of Radcliff  and the Radcliff Police Department fail to adequately train, supervise and control its police department and that police department's officers who were conducting criminal investigations and referring cases to the Commonwealth's Attorney for review and  appearing as witnesses at Grand Jury sessions, such that its failure to do so manifests deliberate indifference; and,

c. As a matter of custom, policy and practice, the Hardin County Attorney's Office and City of Radcliff and Radcliff Police Department facilitate the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct; and,

d. Hardin County Attorney and Hardin County municipal policy makers are aware of and condone the types of misconduct at issue here, evidenced by their disciplinary inaction and failure to report and address misconduct by Radcliff Police Officers, including Defendant Sgt. Kirkpatrick and Hardin District Court employees; and,

e. Hardin County and The City of Radcliff municipal policy makers have failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries in this case; and,

f. Hardin County Attorney's Office and Office of the Commonwealth's Attorney 9th Circuit (Hardin) failed to adequately train, supervise and control employees such as Oldham, Young and Logsdon with regard to investigating and reasonably assessing criminal complaints being sworn out by citizens and assessing criminal complaints to be accepted or rejected and assessing cases to be prosecuted and those *not* rising to the requisite level for prosecution and those policies and lack of policies challenged by Karsner are distinct from the acts the Hardin County Attorney and Commonwealth's Attorney undertake on behalf of the county and/or state, respectively. See *Goldstein v. City of Long Beach*, 715 F.3d 750 (9th Cir. 2013).

g. Even taking into account the control and supervisory powers thereof, the Hardin County Attorney, the Attorney General, and the Office of the Commonwealth's Attorney 9th Circuit (Hardin County) represent the county of Hardin when establishing policy and training related to the acceptance or rejection of criminal complaints sworn out by citizens and related to the use of Grand Jury proceedings and reasonable determination of which cases to prosecute and which to *not* prosecute. Therefore, a cause of action may lie against Hardin County and Oldham, Young and Logsdon individually under 42 U.S.C. § 1983 and *McCollum*.

41. As a result of the aforementioned individual Defendants' actions, as well as the custom, policies and practices of Hardin County municipal policy makers, Hardin County Attorney, The City of Radcliff, the Radcliff Police Department and the Office of the Commonwealth's Attorney 9th Circuit (Hardin), Plaintiff Karsner experienced conscious pain and suffering and injury to her person and deprivation of her property.

[DE 16 at 144-45].

Based on these allegations, it appears as though Karsner asserts that Hardin County and City of Radcliff have a custom of tolerance toward constitutional violations and a policy of inadequate training and supervision. Karsner also appears to assert that Oldham, in her capacity as official policy-maker, ratified the misconduct of Radcliff Police Officers and Hardin District Court employees.

### a. Custom of tolerance toward constitutional violations

To state a § 1983 claim on the basis of a custom of tolerance toward constitutional violations, the plaintiff must allege: "(1) a clear and persistent pattern of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations." *Nouri v. Cty. of Oakland,* 615 Fed. App'x 291, 296 (6th Cir.2015) (internal quotation marks omitted); *see Burgess*, 735 F.3d at 478 ("A custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims").

Karsner has failed to sufficiently state a § 1983 claim on the basis of a custom of tolerance claim against Hardin County and City of Radcliff. Karsner has offered no well-pleaded facts to support the legal conclusion that either defendant was on notice of a pattern or practice of inadequate screening and investigation of criminal complaints filed by aggrieved citizens. *See Nouri,* 615 Fed. App'x at 296–97 (finding plaintiff's complaint fatally deficient where it failed to set forth facts showing pattern of misconduct or reports to municipal officials in support of custom of tolerance claim against municipality); *Lowe v. McMinn Cnty.,* No. 1:15–CV–95, 2015 WL 5177734, at *5 (E.D.Tenn. Sept. 4, 2015) (finding plaintiff's allegation that municipality had not instituted a proper policy for dealing with persons in the midst of a mental break from reality and

failed to train officers to handle confrontations with such persons insufficient to state a claim under § 1983 absent allegation of a pattern of constitutional violations by untrained employees sufficient to establish deliberate indifference); *Sexton v. Kenton Cty. Det. Ctr.,* 702 F.Supp.2d 784, 791 (E.D.Ky.2010) (holding that a municipality's alleged failure to discipline officers in a single instance, as opposed to a systemic policy, is insufficient to survive a motion to dismiss). Nor has Karsner pleaded any specific facts to suggest that either Defendant failed to adequately prepare for recurring situations where a constitutional violation would be likely to take place. *See Munson v. Bryan,* No. 3:15–cv–0078, 2015 WL 4112429, at *5 (M.D.Tenn. July 8, 2015) (where plaintiff failed to plead any specific facts to indicate municipality failed to adequately prepare for recurring situations in which constitutional violations may occur, there were no grounds to support a § 1983 claim against the county defendant).   Indeed, based on her characterization of the alleged constitutional harm, it is unclear how a municipality could adequately create a policy to prevent it or prepare for its reoccurrence.  [DE 32 at 355-56].

### b.  Failure-to-train

To state a failure-to-train claim, the plaintiff must allege: 1) "the training or supervision was inadequate for the tasks performed"; 2) "the inadequacy was the result of the municipality's deliberate indifference"; and 3) "the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). As to the municipality's "deliberate indifference," the plaintiff must either allege: 1) "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury";  or 2) "[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious

potential for such a violation." *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir.2005); *Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 409 (1997).

Karsner has failed to sufficiently state a failure-to-train claim against Hardin County and City of Radcliff because her Amended Complaint consists of legal conclusions "devoid of . . . factual enhancement." *Iqbal*, 556 U.S. at 678.  *See Hall*, 2017 WL 3668113 at * ("[T]he majority of [plaintiff's] allegations relating to the [City's] liability are vague recitations of the elements for a claim that are unsupported by any factual allegations").  Karsner has not plausibly alleged that Hardin County and City of Radcliff had a pattern of committing similar unconstitutional violations. *See Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 944 (M.D. Tenn. 2012) (dismissing failure-to-train claim where plaintiff "[pled] no facts and cite[d] no prior instances of unconstitutional conduct to support his conclusory allegation that Metro was aware of a history of illegal arrests, much less that they ignored them"); *Spainhoward v. White Cty., Tennessee*, 421 F. Supp. 3d 524, 544 (M.D. Tenn. 2019) (dismissing failure-to-train claim where plaintiff did "not set forth *any* facts that there were prior instances of similar misconduct to show that White County was on notice that its training and supervision with respect to vehicular pursuits or the use of force was deficient")  (emphasis in original).

Karsner has likewise failed to sufficiently allege a claim based on a single violation. Nowhere in her Complaint does Karsner allege "a complete failure to train the [staff members], training that is so reckless or grossly negligent that future . . . misconduct is almost inevitable or would properly be characterized as substantially certain to result."  *Harvey v. Campbell Cty., Tenn.*, 453 F. App'x 557, 567 (6th Cir. 2011)  (quoting *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982) (internal quotation marks omitted);  *See Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010) (dismissing municipal liability claims because "[s]tripped of legal

language, [p]laintiff's [c]omplaint contains no fact that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers in the Memphis Police Department[, ... and] fails to allude to any incident of brutality other than the one [the plaintiffs] allegedly suffered"). Nor has she plausibly alleged that Hardin County's and City of Radcliff's deliberate indifference "created a training regimen so deficient that it was the actual *cause* of" the allegedly unconstitutional conduct. *Harvey*, 453 F. App'x 557 at 568 (emphasis in original).

### c. Ratification

Under a ratification theory, a single decision can constitute a municipal policy "if that decision is made by an official who 'possesses final authority to establish municipal policy with respect to the action ordered' which means that his decisions are 'final and unreviewable and are not constrained by the official policies of superior officials.'" *Flagg v. City of Detroit*, 715 F.3d 165, 175 (6th Cir. 2013) (internal citations omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). A final decision maker ratifies a subordinate's action if the decision maker provides "affirmative approval of a particular decision made by [the] subordinate." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993). A decision maker's "mere acquiescence in a single discretionary decision by a subordinate" is, by contrast, insufficient to show ratification. *Id.*

Karsner has not sufficiently alleged that Oldham ratified the conduct of Radcliff Police Officers because she has not alleged that Oldham affirmatively approved of their conduct. Moreover, she has neither plausibly alleged that Oldham, as Hardin County Attorney, had final authority to establish municipal policy for the Radcliff Police Department nor that Radcliff City police officers are her "subordinates." It is likewise implausible that Oldham (a member of the

28

executive branch) made the official policy for Hardin District Court employees (members of the judicial branch).

    2. <u>§ 1985 & § 1986</u>

    Young, Logsdon, and Office of the Commonwealth's Attorney argue that Karsner has failed to sufficiently state a § 1985 or a § 1986 claim against them. [DE 26 at 220-23]. Karsner does not respond to this argument and therefore waives opposition to it. *See infra*, fn. 2.[9]

    "To state a § 1985 claim, a plaintiff must allege '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Webb v. United States*, 789 F.3d 647, 671–72 (6th Cir. 2015) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 518–19 (6th Cir. 2003)). Along with the existence of a conspiracy, § 1985 claims must allege "class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The alleged class "must be based upon race or other 'inherent personal characteristics.'" *Webb*, 789 F.3d at 672 (quoting *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980)).

    Karsner has failed to sufficiently state a § 1985 claim. Plaintiff "does not allege membership in a protected class, or that there was any discriminatory animus on account of class membership . . . In fact, the complaint contains no indication of any class membership at all." *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee by & through*

---

[9] Because Karsner does not contest this issue, and because the arguments made by Young, Logsdon, and Office of the Commonwealth's Attorney apply to the other Defendants, the Court considers whether Karsner has sufficiently stated a § 1985 or a § 1986 against the other Defendants as well, even though they did not raise this issue in their motions to dismiss.

*Traffic & Parking Comm'n*, 805 F. App'x 379, 384 (6th Cir. 2020)  (affirming district court's dismissal of § 1985 claim).  As a result, the Court dismisses Karsner's § 1985 claim against all Defendants.  The Court also dismisses her § 1986 claim against all Defendants because "a § 1986 claim is derivative and conditioned on establishing a § 1985 violation."  *Bartell v. Lohiser,* 215 F.3d 550, 560 (6th Cir. 2000) (string cite).

## D.   Amendment

Karsner states in her response to City of Radcliff's motion to dismiss that if "this Court finds specificity of policies and procedures and training as currently plead in the Plaintiff's Complaint to be deficient, ***then Plaintiff respectfully requests leave to so amend her Complaint***." [DE 33 at 366 (emphasis in original)].  Because Karsner's "request to amend came by a mere passing suggestion" and because she did not attach a second amended complaint to her response, the Court declines to allow her to amend her complaint for a second time.  *See Swanigan v. FCA US LLC*, 938 F.3d 779, 789 (6th Cir. 2019)  ("Plaintiffs' request to amend came by a mere passing suggestion in their consolidated response to defendants' motions to dismiss that 'if for any reason the district court feels the pleadings fall short, plaintiffs request the opportunity to amend their pleadings to correct any deficiencies.' And plaintiffs did not attach a proposed (third) amended complaint to that consolidated response to defendants' motions to dismiss. In similar circumstances we have held this to be an insufficient and incorrect attempt to amend" (formatting omitted); *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) ("A 'request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.' Plaintiffs' motion contained precisely that kind of throwaway language . . .  Both because the plaintiffs did not present an adequate motion and because they did not attach a copy of their amended complaint, the district court did

30

not abuse its discretion in refusing to allow the plaintiffs to amend their complaint based on the final sentence of the plaintiffs' memorandum in opposition"); *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 521–22 (6th Cir. 2008) (noting that the addition of a cursory request for leave to amend on appeal does not cure the error).

In her response, Karsner also states that she is "entitled to discovery on specifically which policy, procedure or custom Kirkpatrick was following when making the decision to not arrest Karsner on September 21, 2015, but also making the decision to refer the case to prosecutors for review and also testifying that a crime actually had been committed that day when he testified before the Grand Jury and when he testified at a criminal jury trial." [DE 33 at 374]. Because Karsner appears to concede that she cannot sufficiently allege a *Monell* claim against City of Radcliff until after she has taken discovery, allowing her to amend her complaint for a second time—*before* discovery—seems futile. *See Taylor v. Brandon*, No. 3:14-CV-588-DJH-DW, 2016 WL 258644, at *2 (W.D. Ky. Jan. 20, 2016) ("[T]he Court rejects Taylor's assertion that his claims should survive because he 'has not yet had the opportunity to conduct meaningful discovery'"); *Iqbal*, 556 U.S. at 678-79 (Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

## IV.    CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Shane Young, Teresa Logsdon, and Office of the Commonwealth's Attorney's Motion to Dismiss [DE 26] is **GRANTED**.  The Clerk of Court is **DIRECTED** to terminate Shane Young, Teresa Logsdon, and Office of the Commonwealth's Attorney as defendants in the record of this matter.

(2) City of Radcliff, Radcliff Police Department, and Sgt. Jarrett Kirkpatrick's Motion to Dismiss [DE 27] is **GRANTED**. The Clerk of Court is **DIRECTED** to terminate City of Radcliff, Radcliff Police Department, and Sgt. Kirkpatrick as defendants in the record of this matter.

(3) Hardin County, Jenny Oldham, and Office of the Hardin County Attorney's Motions to Dismiss [DE 18; DE 28] are **GRANTED**. The Clerk of Court is **DIRECTED** to terminate Hardin County, Jenny Oldham, and Hardin County Attorney's Office as defendants in the record of this matter.

(4) Warren Tooley's Motion to Dismiss [DE 39] is **GRANTED**. The Clerk of Court is **DIRECTED** to terminate Warren Tooley as defendant in the record of this matter.

(5) The Court will enter separate judgment.

Copies to:      Counsel of record